IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| MICHAEL MAHAFFEY,   #186794, ) | Civil Action No. 3:07-793-SB-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| SIMON MAJOR, JR., DIRECTOR OF ) | |
| SUMTER-LEE REGIONAL DETENTION ) | |
| CENTER, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendants. ) | |
| ) | |

Plaintiff filed this action on March 22, 2007.[1] At the time of the alleged incidents, he was a pretrial detainee at the Sumter-Lee Regional Detention Center ("SLRDC"). He is currently incarcerated at the Lee Correctional Institution of the South Carolina Department of Corrections ("SCDC"). On July 17, 2007, Defendant filed a motion for summary judgment. Plaintiff, because he is proceeding pro se, was advised on July 25, 2007, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendant's motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. Plaintiff filed a response on August 15, 2007, and Defendant filed a reply on August 23, 2007.

DISCUSSION

Plaintiff alleges that his freedom of religion was violated because he was only allowed to pray in his cubicle (cell) and not in the SLRDC commons room. He requests an apology, "that all detainees be told they may pra[c]tice their relig[i]on any way they see fit," and $50,000. Complaint

---

[1] Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(e), DSC. Because these are dispositive motions, this Report and Recommendation is entered for review by the court.

at 5. Defendant contends that his motion for summary judgment should be granted because: (1) Plaintiff is unable to state a claim pursuant to the First Amendment, as there is no evidence he has been discriminated against based on his religion; (2) Plaintiff fails to establish any personal involvement on the part of the Defendant or any theory of liability upon which Defendant could be responsible for any of Plaintiff's alleged deprivations; (3) Plaintiff is unable to state a claim under the Fourteenth Amendment, as he was not punished by Defendant; (4) Defendant is entitled to qualified immunity; (5) Plaintiff is unable to state a constitutional claim based on the grievance procedure at the SLRDC; (6) Plaintiff's action is barred by the principle of res judicata; (7) Plaintiff's action is barred by the doctrine of collateral estoppel;[2] and (8) this action should be dismissed under 28 U.S.C. § 1915(e) and § 1915A.

     1.     <u>First Amendment/Religion</u>

Plaintiff appears to allege that his First Amendment rights were violated because the duty officer on March 9, 2007 stated that no detainee was allowed to pray anywhere except in his cubical. He claims that Lt. Nancy McMillan responded to a grievance he filed on March 9, 2007, by stating that "we do tell you where to pray." Defendant contends that Plaintiff fails to establish a constitutional violation because confining inmate prayer to detainees' cells is reasonably related

---

[2] Defendant contends that this action is barred by the doctrines of res judicata and collateral estoppel because Plaintiff could have litigated these issues in another civil action (Civil Action Number 3:06-3383-SB-JRM) in which a dispositive motion was pending at the time Plaintiff filed this action. In Plaintiff's prior action, Plaintiff brought claims concerning actions taken after he was accused of violating rules concerning an inmate's behavior during an institutional headcount. Although that action also concerned religious claims, the claims in this action appear to be distinct from those in the previous action and the regulation in question was allegedly not announced until well after Plaintiff filed the previous action.

2

to SLRDC's legitimate interest of maintaining institutional security and Plaintiff is able to exercise his religion in his own cell.

The rights and protections of the Constitution do not end when a citizen is sentenced to prison. Turner v. Safley, 482 U.S. 78, 84 (1987).[3] Imprisonment may limit, but not completely abrogate, a prisoner's right to the free exercise of his religion. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348-49 (1987). However, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by considerations underlying our penal system." Price v. Johnson, 334 U.S. 266, 285 (1948). For that reason, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. at 89. Where prison officials demonstrate that they are pursuing a legitimate governmental objective, and show a "minimally rational relationship between that objective and the means chosen to achieve that objective," the means must be upheld. Hines v. South Carolina Dep't Corrs., 148 F.3d 353, 358 (4th Cir. 1998).

To determine whether a regulation relied upon by a defendant is constitutionally permissible, the court must consider the following factors: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; and (3) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally. Turner, 482 U.S. at 89-90.

---

[3] The Fourteenth Amendment affords at least as much protection to persons the State detains for trial. See Bell v. Wolfish, 441 U.S. 520, 545 (1979) ("[P]retrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that we have held are enjoyed by convicted prisoners").

Plaintiff fails to show that his constitutional rights were violated. Under the first Turner factor, the regulation has a valid, rational connection to a legitimate government interest. Major states that detainee prayer at the SLRDC is confined to detainee cells to maintain order within the institution. He states that when detainees convene or congregate in the hallways, lobbies, or other common areas, it inhibits the flow of traffic throughout those areas and poses a danger to the safety and security of the institution. Major Aff., Paras. 4-6; see also McMillan Aff., Paras. 6-8. In his opposition memorandum, Plaintiff alleges that the intent of the regulation is to intimidate detainees and SLRDC and that he was not able to say a prayer to bless his food prior to eating. As discussed above, Major states that the intent of the regulation is to prevent detainees from convening in the common areas or hallways. Defendants provide that nothing would prohibit a detainee from saying a quiet personal blessing prior to eating at the SLRDC. Defendant's Reply at 1-2. Under the second prong, Plaintiff had an alternative means of exercising his right, to pray in his cell. Major also states that there are worship services and Bible studies available at the SLRDC. See Major Aff., Para. 5. Finally, Defendant provides that the potential impact to the guards, other inmates, and allocation of prison resources generally if accommodation of Plaintiff's asserted right was made would threaten the safety of the correctional officers, institutional staff, and other inmates. Plaintiff has offered no alternatives to the regulation. Defendant states he is unaware of alternatives to the regulation that would satisfy safety requirements.

  2.  Fourteenth Amendment/Punishment

Plaintiff may be attempting to allege that his Fourteenth Amendment rights were violated because he was not allowed to pray anywhere he wanted. Defendant argues that the

4

restrictions placed upon Plaintiff were clearly reasonable and did not amount to punishment under the Fourteenth Amendment.

Allegations of deprivations of pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment. Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987). The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions. . . the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.

(Citations omitted). However, the due process rights of detainees are at least coextensive with Eighth Amendment rights of convicted prisoners, and perhaps greater. Whisenant v. Yuam, 739 F.2d 160 (4th Cir. 1984); Loe v. Armistead, 582 F.2d 1291, 1292 (4th Cir. 1978).

A pretrial detainee may not be punished. An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual." Bell v. Wolfish, 441 U.S. 520 (1979). Thus, it must be determined whether the conditions and/or treatment received by a plaintiff amounted to punishment. Absent a showing of expressed intent to punish on the part of correctional officials, the determination whether a particular condition or restriction is punishment generally turns on whether it is rationally connected to a legitimate non-punitive purpose and whether it is excessive in relation to that purpose. Bell, 441 U.S. at 538.

Here, the restrictions imposed on Plaintiff which prohibited him from praying in the commons room at SLRDC were rationally connected to a legitimate, non-punitive purpose of

maintaining security at the SLRDC by not having the SLRDC hallways, lobbies, and common areas clogged with inmates convening or congregating in prayer and impeding the ability of the correctional officers to observe inmates, issue orders, and travel throughout the institution. Plaintiff, who was allowed to pray whenever he wanted in his own cell and was allowed to attend worship services and Bible study, has not shown that the regulation was excessive in relation to its purpose.

    3.    <u>Grievances</u>

Plaintiff claims that he wrote a grievance to Mr. McGainey, the Assistant Director of the SLRDC, and the grievance never reached McGainey. He states that it is his "understanding" that no grievance was to reach McGainey or Defendant Major and that other officers would destroy grievances or send replies without allowing the grievances to be sent to the addressees. Complaint at 3. Defendant contends that Plaintiff's grievances have been properly processed and Plaintiff fails to establish a claim because he possesses no constitutional right to a grievance system.

Major states that each properly filed grievance received from Plaintiff was processed and answered, there is no directive that the Defendant or Assistant Director not see a grievance, and the Assistant Director is in charge of the SLRDC grievance process. Major Aff., Paras. 11-12. Nancy McMillan states that she responded to Plaintiff's grievance because it was forwarded to her as a shift supervisor and the grievance was not forwarded to Major McGhaney or Director Major because it was not addressed to them. McMillan Aff., Para. 5.

Plaintiff fails to establish a claim concerning grievances. The "Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by the state." <u>Adams v. Rice</u>, 40 F.3d 72, 75 (4th Cir. 1994). Even assuming that Defendant violated SLRDC grievance procedures, such an action does not state a claim which is actionable under

§ 1983.  See Brown v. Dodson, 863 F. Supp. 284 (W.D.Va. 1994).  Further, allegations that SLRDC employees have not followed their own policies or procedures, standing alone, do not amount to constitutional violations.  See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)(if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue); Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992)(violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

    4.        Supervisory Liability

Defendant Major contends that Plaintiff fails to establish any personal involvement on his part or any theory of liability upon which he could be responsible for Plaintiff's alleged deprivations.  The doctrine of respondeat superior generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action.  See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-43 (4th Cir. 1982).  Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization.  Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985).

Plaintiff did not allege that Defendant Major was personally responsible for any of the alleged incidents.  Further, Plaintiff has not shown that Major was deliberately indifferent to, or tacitly authorized, any of these alleged actions or inactions.  Thus, Plaintiff cannot show that Defendant Major is liable on a theory of respondeat superior or supervisory liability.

5. <u>Qualified Immunity</u>

Defendant also contends that he is entitled to qualified immunity. The Supreme Court in <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

<u>Harlow</u>, 457 U.S. at 818.

The Court of Appeals for the Fourth Circuit has stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

<u>Wiley v. Doory</u>, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), <u>cert. denied</u>, 516 U.S. 824 (1995). As discussed above, Plaintiff fails to show that Defendant violated any of his clearly established constitutional or statutory rights. Therefore, Defendant is entitled to qualified immunity in his individual capacity.

<u>MOTION FOR RESTRAINING ORDER</u>

On July 27, 2007, Plaintiff filed a motion for a restraining order. He claims that on May 29, 2007, he received an opened letter from the Department of Justice. He also claims that he has had delays in receiving mail from this court and that in the past he has not received mail from his family and a Bible study group. He requests that this court instruct SLRDC employees to "refrain from stealing, destroying, opening, and tampering with any and all mail from the United States District Court, the U.S. Department of Justice, and any attorney." On August 13, 2007, Defendant filed a response. Defendant contends that Plaintiff's motion should be denied because Plaintiff has offered no evidence or information to support his claim, Plaintiff has not presented a basis for a temporary restraining order under Federal Rule 65, and Plaintiff has not filed a complaint and motion for a preliminary injunction as to the issues in his motion. Defendant also argues that if Plaintiff's motion is construed as seeking injunctive relief, Plaintiff fails to meet the requirements necessary to grant such relief.

The court is required to consider and balance four factors in determining whether to grant injunctive relief prior to a trial on the merits:

> (a)  plaintiff's likelihood of success in the underlying dispute between the parties;
>
> (b) whether plaintiff will suffer irreparable injury if the interim relief is denied;
>
> (c)  the injury to defendant if an injunction is issued; and
>
> (d) the public interest.

Manning v. Hunt, 119 F.3d 254, 263 (4th Cir. 1997); Hughes Network Sys., Inc. v. InterDigital Commc'n Corp., 17 F.3d 691, 693 (4th Cir. 1994); North Carolina State Ports Auth. v. Dart Containerline Co., Ltd., 592 F.2d 749 (4th Cir. 1979); and Blackwelder Furniture Co. v. Seilig Mfg.

Co., 550 F.2d 189 (4th Cir. 1977). The two most important factors are probable irreparable injury to a plaintiff if the relief is not granted and the likelihood of harm to a defendant if the injunction is granted. Manning, 119 F.3d at 263; North Carolina State Ports Auth., 592 F.2d at 750.

A plaintiff does not have an automatic right to a preliminary injunction, and such relief should be used sparingly. The primary purpose of injunctive relief is to preserve the status quo pending a resolution on the merits. Injunctive relief which changes the status quo pending trial is limited to cases where "the exigencies of the situation demand such relief." Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980).

It is recommended that Plaintiff's motion for a restraining order be denied. Construing his motion as one for injunctive relief, Plaintiff fails to show that he is entitled to such relief. Plaintiff has not shown that his request for relief is related to the underlying dispute and he is unlikely to be successful on the merits in the underlying dispute, as discussed above. Plaintiff fails to provide any evidence of any harm he has suffered or will suffer if injunctive relief is denied. Plaintiff's claims for declaratory and/or injunctive relief are moot, as he has been transferred from the SLRDC to SCDC custody. See Williams v. Griffin, 952 F.2d 820, 823 (4th Cir.1991)("[T]he transfer of a prisoner render[s] moot his claim for injunctive and declaratory relief."); Taylor v. Rogers, 781 F.2d 1047, 1048 n. 1 (4th Cir.1986)(holding that prisoner's transfer mooted a request for declaratory and injunctive relief). Cf. Powell v. McCormack, 395 U.S. 486, 496 (1969)("[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."); Magee v. Waters, 810 F.2d 451, 452 (4th Cir.1987); Buie v. Jones, 717 F.2d 925, 927-929 (4th Cir.1983). Defendant provides that if injunctive relief is granted, the SLRDC would be subjected to a severe disruption to the safety and security of the SLRDC, as the inspection of

10

inmate mail is a legitimate and necessary means of maintaining institutional security. Finally, Defendants provide that their actions are directed to insuring a safe environment and the public has in interest in maintaining such a safe environment. Plaintiff has not provided any argument as to how granting the requested relief is in the public interest.

## CONCLUSION

Based on review of the record, it is recommended that Defendant's motion for summary judgment (Doc. 18) be granted. It is also recommended that Plaintiff's motion for a restraining order (Doc. 20) be denied.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

January 30, 2008
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).